# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-21-01117-001-TUC-JAS (JR) |
| Plaintiff, | **ORDER** |
| v. | |
| Alexis Ivan Garcia, | |
| Defendant. | |

Pending before the Court is a Report and Recommendation (Doc. 63) issued by United States Magistrate Judge Rateau, recommending this Court grant Plaintiff's Motion to Suppress (Doc. 37). The Court has reviewed the record, including the Government's Response to Defendant's Motion (Doc. 43), the Government's Objection to Judge Rateau's Report and Recommendation (Doc. 66), and Defendant's Response to the Government's Objection (Doc. 69). For the reasons set forth below, this Court will not follow Judge Rateau's recommendation and instead denies Defendant's Motion.

## **INTRODUCTION**

Defendant asks this Court to suppress evidence he says was gathered in violation of the Fourth Amendment. Judge Rateau correctly rejected four of Defendant's five arguments in favor of suppression but agreed with Defendant's argument that Border Patrol Agents exceeded the scope of a consensual search when they reviewed files on Defendant's phone that they had not previously opened in Defendant's presence. It is here that this Court disagrees with Judge Rateau.

**STANDARD OF REVIEW**

District Courts review *de novo* those portions of a Report and Recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1)(C). As to any new evidence, arguments, and issues not timely and properly raised before a Magistrate, a District Court may exercise its discretion to consider those matters waived. *United States v. Howell*, 231 F.3d 615, 621-623 (9th Cir. 2000). A Court's *de novo* review includes any objections and responsive briefings to a Report and Recommendation, in addition to the record and authority before the Magistrate which led to a Report and Recommendation.

**BACKGROUND[1]**

Defendant was arrested in August of 2020 on suspicion of alien smuggling. During an interview with Border Patrol agents, Defendant signed a consent form, allowing agents access to his cell phone. Agents told Defendant that they would search his phone for "information … relevant to the case [of alien smuggling]," and proceeded to review text messages, previous phone calls, and other parts of the phone, but did not review any photos or videos. In December of 2020, another agent reviewed a file system which contained all the files that were on Defendant's phone at the time of his interview. This agent found photos and videos which appeared to be child sex abuse material.

This Court adopts in their entirety sections a, c, d, and e from Part III of Judge Rateau's Report and Recommendation. There, Rateau recommends this Court reject Defendant's arguments that he did not voluntarily consent to a search (section a), that he was unable to withdraw his consent (section c), that he *did* withdraw his consent (section d), and the Government's argument that the inevitable discovery doctrine would save any evidence that may have been gathered in violation of the Fourth Amendment (section e). In section b, however, Judge Rateau recommends this Court accept Defendant's argument that he only consented to agents searching those parts of his phone that they reviewed with Defendant during his interview. The reasoning is that agents limited the scope of Defendant's consent when they said their search would be for information relevant to the

---

[1] The Court adopts the facts from Part I of Judge Rateau's Report and Recommendation.

alien smuggling case and proceeded to only look through portions of Defendant's phone. The Court disagrees with that argument and with it Judge Rateau's recommendation.

### DISCUSSION

**I.** When determining the scope of a defendant's consent, courts employ an objective reasonableness standard. *United States v. Lopez-Cruz*, 730 F.3d 803, 809 (9th Cir. 2013). Courts ask, "what would the typical reasonable person have understood by the exchange between the officer and the suspect." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

Either the party consenting to a search or the one performing it can limit the scope of that search. In *United States v. Elliot*, a police officer limited the scope of a search by asking to look through the trunk of a suspect's vehicle, going on to say that he did not "want to look through each item." 107 F.3d 810, 815 (10th Cir. 1997). By adding that he did not want to look through each item, the officer created the reasonable impression that his search would be more cursory than the typical search of a vehicle's trunk.

Further, officers may limit the scope of a search by specifying its purpose. *See Lopez-Cruz* at 809. In *United States v. Turner*, the First Circuit held that an objectively reasonable person would have believed a search had been limited in scope when officers told the defendant that they were going to search his home for signs of an intruder. 169 F.3d 84, 87-88 (1st. Cir. 1999). By expressing a purpose for the search, officers limited the permissible scope of their search to those areas of a home where a reasonable person would expect to find signs of intrusion. *Id.* at 87. Consent was limited despite the defendant having singed a written consent form that contained no limitations. *Id.*

So, officers' words matter. Even though a defendant may have signed a consent form allowing an unlimited search, consent may still be limited according to an officer's verbal qualifications, such as expressions of purpose. Border Patrol Agents made such an expression in this case.

Agents told Defendant they were going to search his phone for "whatever information was relevant to the case." Doc. 63 at 3. By qualifying their search, agents limited the scope of Defendant's consent, but they did not limit it so far as to preclude the

challenged evidence. A reasonable person in Defendant's position would not have understood the agents' expression to limit the search, as Defendant argues, only to those areas of the phone agents reviewed during the interview. Rather, a reasonable person would understand the agents' words according to their plain meaning: that agents would only search parts of Defendant's phone that could contain evidence relevant to alien smuggling.

The question is therefore whether a reasonable person would think agents might find evidence relevant to alien smuggling in the photos section of Defendant's cell phone. The answer is yes. Such evidence might include photos taken of people being smuggled across the border, photos taken while travelling across the border, photos of written instructions or other communications, and screenshots of the same, to list just a few possibilities.

Defendant also argues that officers limited the permissible scope of their search by only reviewing portions of Defendant's phone during the interview. But to accept this argument would put officers in the untenable position of having to thoroughly and conclusively review all evidence for which a suspect has granted consent *during* the encounter in which a suspect granted their consent. Otherwise, any evidence officers missed on initial inspection would exceed the reach of the suspect's consent. Defendant cites no authority supporting this rule because there *is* no such rule. The Court declines to create one in this case.

**II.** Under the Plain View Doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers had a lawful right to access the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). In *United States v. Wong*, police found evidence of child pornography while searching a suspect's computer for evidence of murder. 334 F.3d 831, 834-35 (9th Cir. 2003). Police had a warrant in the murder case, allowing them to search the suspect's computers and disks to "obtain data as it relates to [the murder case]." *Id.* at 834. The Ninth Circuit held that the police satisfied the Supreme Court's requirements for the plain view doctrine; they were lawfully in a position to view the computer files containing child pornography, the incriminating character of the files was

clear, and police had a legal right to seize such material upon finding it. *Id.* Thus, officers did not need a warrant for the child pornography they inadvertently discovered while searching for evidence of murder, and the evidence was admissible. *Id.*

In this case, Defendant's consent serves the same function as the warrant in *Wong*. It put Border Patrol Agents in a position from which they could view certain files on Defendant's phone, and as explained above, the files agents searched were within the limited scope of Defendant's consent. The agent who found the alleged child sex abuse material immediately identified it as illegal, and because the agent was permissibly searching areas of the phone subject to Defendant's limited consent, seizure was appropriate. The evidence is admissible.

## **ORDER**

For the reasons set forth above, the Court will not follow the recommendation of Magistrate Judge Rateau in its entirety. Accordingly, IT IS ORDERED as follows

(1) The Court adopts all parts of the Report and Recommendation (Doc. 63) *except for* Part III, section b.

(2) The Court rejects Part III, section b of the Report and Recommendation.

(3) Defendant's Motion to Suppress (Doc. 37) is DENIED.

Dated this 14th day of February, 2023.

Honorable James A. Soto
United States District Judge